# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DARRIN D. CESKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13 C 6403 |
| ) | |
| CITY OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Darrin Ceska has sued the City of Chicago under the Americans with Disabilities Act (ADA) for discrimination and failure to accommodate. 42 U.S.C. § 12112(a). He has also sued the City for race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). The City has moved for summary judgment. For the reasons stated below, the Court grants the City's motion.

## Background

In 1997, Darrin Ceska was hired as a motor truck driver (MTD) in the City's Department of Streets and Sanitation (DSS). He was required to drive heavy-duty vehicles and lift up to thirty-five pounds. Beginning in 2009, Ceska was detailed to the City's Bureau of Traffic Services, where he worked as an equipment dispatcher. Ceska retained the title of MTD throughout his detail and returned to his MTD position in 2011.

In May 2011, Ceska suffered a work-related neck injury. He was placed on paid disability leave and underwent a neck cervical fusion and disc placement surgery. One

year later, Ceska's doctor determined that Ceska had reached maximum medical improvement. He was cleared to return to work in a light duty position with lifting restrictions of eight pounds frequently and twenty pounds occasionally. Because of these lifting restrictions, Ceska could not return to his former position.

In August 2012, Angie Matos, the person responsible for processing medical and disability leave at DSS, contacted Ceska about a temporary MTD position in the Bureau of Rodent Control. Because the position involved driving light duty vehicles, Matos believed that the position was within Ceska's restrictions. Ceska met with Matos to discuss the position. During their meeting, Ceska told Matos that he did not believe that the position was within his restrictions because he could not drive while taking narcotic medication. According to Ceska, Matos replied, "[t]ake your medicine after the fact," and she threatened to fire him for refusing to work. Def.'s Resp. to Pl.'s LR 56.1(b)(3)(C) Stat., Ex. 1 (Ceska Dep.), at 95:10-15, 96:3-7.

Ceska reported to work for the Rodent Control position on August 27, 2012. He alleges that he reinjured his neck while driving the light duty vehicle and that, by the end of the day, his neck "was all swollen up" and "looked like a bullfrog." Def.'s LR 56.1(a) Stat., Ex. C (Ceska Dep.), at 113:16-20. Because of this injury, Ceska told his supervisor that he could not perform the duties of the Rodent Control position. On August 29, he submitted a request for paid disability leave, claiming that he had reinjured his neck on August 27. This request was denied in November 2012.

In February 2013, Ceska's doctor changed his work restrictions from light work to sedentary work and changed his lifting restrictions to ten pounds occasionally.

2

Following this modification, Ceska was placed on unpaid medical leave, where he remained through the filing of this lawsuit.

In March 2014, Ceska applied for an equipment dispatcher position in the City's Department of Aviation. He failed an examination required for the equipment dispatcher position, and as a result, his application was not considered further.

Ceska filed this suit in September 2013. He alleges that the City failed to accommodate his disability by refusing to reassign him to a vacant position. Moreover, he asserts, the City's failure to provide a reasonable accommodation forced him to go on unpaid medical leave, leaving him "with no possibility of being able to return to work due to the permanent nature of his condition, effectively terminating him from employment." Compl. ¶ 8. Ceska also alleges that the City discriminated against him on the basis of disability and race because Greg Jackson, another MTD in DSS, was provided an accommodation that was denied to Ceska: transfer to an equipment dispatcher position. Ceska's race discrimination claim stems, in part, from the fact that Jackson is African American (Ceska is Caucasian); Ceska's disability discrimination claim stems, in part, from his belief that Jackson is not disabled.

**Discussion**

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). Summary judgment is inappropriate "if the

3

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## I.  Reasonable accommodation

Under the ADA, an employer's failure to make reasonable accommodations for the known limitations of a disabled employee constitutes prohibited discrimination. 42 U.S.C. § 12112(a), (b)(5)(A).  To sustain an accommodation claim, Ceska must show that (1) he is a qualified individual with a disability, (2) the City was aware of his disability, and (3) the City failed to reasonably accommodate his disability.  *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013).  The City argues that Ceska cannot prove any of these elements.

### A.  Individual with a disability

An individual is disabled under the ADA if he (1) has a physical or mental impairment that substantially limits one or more of his major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1).  In 2008, Congress passed the ADA Amendments Act (ADAAA), which relaxed this inquiry significantly.  *See* Pub. L. No. 110-325, 122 Stat. 3553 (effective January 1, 2009) (finding that courts had "narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect").  "Of particular note, Congress stated that the term 'substantially limits' should be interpreted broadly to provide wide coverage." *EEOC v. AutoZone, Inc.*, 630 F.3d 635, 641 n.3 (7th Cir. 2010).  The ADAAA implementing regulations provide that "[t]he question of whether an individual meets the definition of disability under [the ADA] should not demand extensive

4

analysis." 29 C.F.R. § 1630.1(c)(4). Moreover, the "impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.1(j)(1)(ii). Rather, the impairment need only "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." *Id.*

The City argues that Ceska is not disabled because his neck injury does not does not substantially limit one or more major life activities. In support of this argument, the City relies on case law that predates the ADAAA.[1] Because the employment decision at issue in this case occurred in 2012, however, the ADAAA is controlling. Accordingly, this case law is inapposite.

A reasonable jury could find that Ceska is disabled under the less demanding standard of the ADAAA. Ceska was initially restricted to lifting eight pounds frequently and twenty pounds occasionally, which was later changed to ten pounds occasionally.[2] Under either restriction, a reasonable jury could find that Ceska was substantially limited in the major life activity of lifting. *See* 29 C.F.R. pt. 1630, app. § 1630.2(j)(1)(viii) (2014) ("[S]omeone with an impairment resulting in a 20-pound lifting restriction . . . is substantially limited in the major life activity of lifting, and need not also show that he is unable to perform activities of daily living that require lifting in order to be considered

---

[1] Some of the decisions cited by the City postdate the ADAAA, but they involved employment decisions that predated the ADAAA's effective date.

[2] Generally, "[t]he determination as to whether an individual is a 'qualified individual with a disability' must be made as of the time of the employment decision." *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir. 1998). In this case, the precise date of the employment decision is unclear from the record. Because Ceska is disabled under both the earlier and later restrictions, however, the Court need not resolve this issue.

5

substantially limited in lifting."). Additionally, since his surgery in 2011, Ceska has only been capable of three to four hours of sleep per night, and he requires medication to do so. Def.'s LR 56.1(a) Stat., Ex. C (Ceska Dep.), at 216:8-219:4. Under the ADA, "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication . . . ." 42 U.S.C. § 12102(4)(E)(i)(I). Thus, for the purposes of determining whether Ceska is disabled, the Court must assume that he cannot even sleep for three or four hours per night. On these facts, a reasonable jury could find that Ceska is substantially limited in the major life activity of sleeping. *See, e.g.*, *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 546 (10th Cir. 2014) (holding that a reasonable jury could find that sleeping four to six hours per night is a substantial limitation on sleep).

### B. Awareness of disability

The City argues that Ceska failed to make the City aware of his disability because he did not adhere to the City's accommodation procedures. These procedures include "fill[ing] out and submit[ting] an accommodation request form . . . ." Def.'s Mem. in Supp. of Mot. for Summ. J. at 8-9. It is undisputed, however, that Ceska provided the City with documents that stated his medical restrictions. Def.'s LR 56.1(a) Stat. ¶ 21 ("Before returning to work on August 27, 2012, [p]laintiff gave Matos [, the DSS employee responsible for processing medical and disability leave,] documents which indicated that he could not return to his previous duties, and restricted his lifting to eight

(8) pounds frequently and [twenty (20)][3] pounds occasionally.")  Indeed, the City attempted to provide Ceska with a position that it believed to be within his restrictions (the MTD position in the Bureau of Rodent Control).  *Id.* ¶ 22.  On these facts, a reasonable jury could find that the City was aware of Ceska's disability and need for an accommodation.  *See, e.g., EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 804 (7th Cir. 2005) (a reasonable jury could find that providing two doctor's notes stating that the patient suffered from neuropathy and should avoid walking long distances is sufficient notice).

### C. Qualified individual and reasonable accommodation

Under the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Ceska concedes that he could not perform the essential functions of the MTD position without accommodation.  He must therefore show that he could perform the essential functions of the MTD position with an accommodation.  The only accommodation Ceska identifies, however, is reassignment.  "[T]he ADA does indeed mandate that an employer appoint employees with disabilities to vacant positions for which they are qualified, provided that such accommodations would be ordinarily reasonable and would not present an undue hardship to that employer."  *EEOC v. United Airlines, Inc.*, 693 F.3d 760, 761 (7th Cir. 2012); *see also* 42 U.S.C. § 12111(9)(B) (providing that the term

---

[3] The City's Local Rule 56.1(a) Statement actually says "twenty-five (25)" pounds occasionally.  This is an incorrect statement of Ceska's restrictions, however.  In her deposition, Matos says that Ceska was restricted to "[n]o lifting greater than 8 pounds, 20 pounds occasionally," which is consistent with the work restriction notes from Ceska's doctor.  Def.'s LR 56.1(a) Stat., Ex. H (Matos Dep.), at 14:12-13.

7

"reasonable accommodation" may include "reassignment to a vacant position"). It is the plaintiff's burden, however, to show that a vacant position existed for which he was qualified. *See Teague v. Nw. Mem'l Hosp.*, 492 F. App'x 680, 685 (7th Cir. 2012) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005)).

Ceska only identifies one vacant position for which he was qualified: the equipment dispatcher position. But the equipment dispatcher position was not a reasonable accommodation, for several reasons. First, it is undisputed that the equipment dispatcher position would have been a promotion under the collective bargaining agreement (CBA). Pl.'s Resp. to Def.'s LR 56.1(a) Stat. ¶ 13. The ADA does not require an employer "to accommodate a disabled employee by promoting him to a higher level position." *Malabarba v. Chi. Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998); *see also* 29 C.F.R. pt. 1630, app. § 1630.2(o) (2014) ("[A]n employer is not required to promote an individual with a disability as an accommodation."). In his deposition, Ceska testified that he only earned fifty cents more per hour when he was detailed to City's Bureau of Traffic Services. Pl.'s Resp. to Def.'s LR 56.1(a) Stat. ¶ 13. He nevertheless concedes that the equipment dispatcher position would have been a promotion under the CBA. *Id.*

Next, it is undisputed that, as a promotion, the dispatcher position was subject to posting, bidding, testing, and seniority requirements of the CBA. *Id.* The seniority requirements are particularly important, as "[a]n employer's showing of violation of the rules of a seniority system is by itself ordinarily sufficient to demonstrate that the accommodation sought is unreasonable." *EEOC v. United Airlines*, 693 F.3d at 763 (internal quotation marks omitted) (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391,

8

405 (2002)).  This is not "a per se exception for seniority systems, since the plaintiff nonetheless remains free to show that special circumstances warrant a finding that, despite the presence of a seniority system (which the ADA may not trump in the run of cases), the requested 'accommodation' is 'reasonable' on the particular facts."  *Id.* (internal quotation marks omitted).  Ceska does not argue, however, that the facts of his case present special circumstances, and the Court will not make this argument for him.

The City also contends that Ceska failed to satisfy the legitimate prerequisites of the equipment dispatcher position.  Under the ADA, employers are only required to "appoint employees with disabilities to vacant positions for which they are qualified . . . ." *Id.* at 761.  To be "qualified" for a position, the employee must "satisfy the legitimate prerequisites for that alternative position . . . ." *Dalton v. Subaru-Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998).  The City notes that Ceska applied for an equipment dispatcher position in the City's Department of Aviation (DOA) and, during that process, failed an exam related to the duties of the position.  Because Ceska failed the DOA equipment dispatcher exam, the City argues, he does not satisfy the legitimate prerequisites of the DSS dispatcher position.

The record does not provide a basis to find that the DOA exam has any bearing on Ceska's qualifications for the DSS position.  Neither of the parties have submitted evidence on the similarities or differences between the two equipment dispatcher exams.  It seems likely that the exams would, in fact, be different:  the DOA oversees Chicago's two major airports; the DSS oversees garbage collection, snow removal, towing, abatement of rodents, and similar services.  Indeed, one of DSS's administrative

officers acknowledged that there might be differences between the exams, though she could not say for certain. Def.'s LR 56.1(a) Stat., Ex. K (Lanton Dep.), at 81:3-82:24.

That said, Ceska nevertheless failed to provide evidence from which a reasonable jury could find that he satisfied the legitimate prerequisites of the DSS position. Like the DOA equipment dispatcher position, the DSS position requires a qualification exam. There is no evidence that Ceska ever took this exam.

Ceska makes three arguments in response. First, he argues that administering the DOA exam was itself a violation of the ADA. Under the ADA, "[i]t is unlawful for [an employer] to use . . . employment tests . . . that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, on the basis of disability," unless the test "is shown to be job related for the position in question and is consistent with business necessity." 29 C.F.R. § 1630.10 (2011). Ceska provides no evidence, however, that the exam tended to screen out individuals with his disability (such as by testing a candidate's lifting abilities, even though the equipment dispatcher position does not require lifting). Indeed, the only evidence in the record suggests that the dispatcher exam simply tested the candidate's facility with dispatching equipment. Def.'s LR 56.1(a) Stat., Ex. K (Lanton Dep.), at 79:4-14, 81:10-18.

Second, Ceska points out that Greg Jackson was transferred from an MTD position to an equipment dispatch position without undergoing any of the City's promotion procedures. But Jackson was only temporarily detailed to dispatch, for reasons unrelated to disability (he filed charges against another employee). Def.'s LR 56.1(a) Stat., Ex. T (Def.'s Answer to Pl.'s Third Set of Interrogs.), at 1-2. Ceska, by

contrast, sought permanent placement in dispatch. That is sufficient to distinguish Jackson's transfer from Ceska's request for accommodation.

Third, Ceska argues that the City failed to engage in an interactive process to identify a reasonable accommodation. But "the failure to engage in the interactive process required by the ADA is not an independent basis for liability under the statute . . . ." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013). "Even if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation." *Id.* Because Ceska has failed to present evidence of a reasonable accommodation, the Court does not consider whether the City engaged in an interactive process.

Viewing the evidence in the light most favorable to Ceska, no reasonable jury could find that reassignment to the equipment dispatcher position was a reasonable accommodation. Because this is the only accommodation identified by Ceska, and because he could not perform the essential functions of his MTD position without an accommodation, Ceska is not a qualified individual under the ADA. His accommodation claim therefore fails.

### D. Disability discrimination

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). Discrimination under the ADA can be proved either directly or indirectly. *See Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 489 (7th Cir. 2014). Ceska only proceeds under the indirect

method.  To prove disability discrimination under the indirect method, Ceska must establish a prima facie case by pointing to evidence tending to show that (1) he was a qualified individual with a disability within the meaning of the ADA, (2) he was meeting his employer's legitimate expectations, (3) he nevertheless suffered an adverse employment action, and (4) similarly-situated, non-disabled employees were treated more favorably.  *Id.*

The Court will address the third requirement first.  The City argues that Ceska has not suffered an adverse employment action.  Ceska contends that constructive imposition of unpaid medical leave—here, because Ceska alleges that the City failed to provide a reasonable accommodation, leaving him no choice but to go on unpaid medical leave—is an adverse employment action.  An adverse employment action is a material change to the terms and conditions of employment.  *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013).  To be "material," the change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.*  Examples of materially adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."  *Id.*  The Court concludes that consigning an employee to unpaid medical leave by denying the employee a reasonable accommodation—in practical effect, a discharge (or, at the very least, a decrease in wages)—constitutes an adverse employment action.  *See White v. Honeywell, Inc.*, 141 F.3d 1270, 1279 (8th Cir. 1998) (holding that constructive imposition of medical leave is tantamount to constructive discharge because "[i]n either

case, the employer has . . . forced the employee out of active service"); *Eggers v. Moore*, 257 F. App'x 993, 995 (6th Cir. 2007) (citing *Honeywell* for the proposition that a forced medical leave of absence may be considered constructive discharge); *cf. Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005) (acknowledging that change to flex-time schedule would not be materially adverse for "99% of the staff," but holding that change was materially adverse for plaintiff because "[i]n practical effect the change cut her wages by 25%, because it induced her to use leave for two hours per day" to manage her son's medical condition); *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 877-78 (7th Cir. 1999) (recognizing constructive demotion as a materially adverse employment action).

Although the Court concludes that constructive imposition of medical leave is an adverse employment action, Ceska cannot establish a prima facie case of disability discrimination for two reasons, each of which is sufficient to defeat his claim. First, as discussed above, because the accommodation Ceska identifies was not reasonable, no reasonable jury could find that Ceska was a qualified individual. Second, no reasonable jury could find that similarly-situated, non-disabled employees were treated more favorably than Ceska. An employee is similarly situated if there are "sufficient commonalities on the key variables between the plaintiff and the would-be comparator[s] to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012). Any distinctions between the plaintiff and the comparators cannot be "so significant that they render the comparison effectively useless." *Id.* The only similarly-situated employee that Ceska identifies is

Greg Jackson. But as discussed above, Jackson is not similarly situated to Ceska. Jackson was temporarily detailed to the equipment dispatch position pending an investigation in his unit; Ceska, by contrast, sought permanent placement in the equipment dispatch position. Ceska does not offer any additional evidence of discrimination. Thus, no reasonable jury could find that the City discriminated against Ceska on the basis of disability.

## II.     Race discrimination

Ceska also alleges that the City discriminated against him on the basis of race. As with the disability discrimination claim, Ceska proceeds only under the indirect method of proof. To prove race discrimination under the indirect method, Ceska must establish a prima facie case by pointing to evidence tending to show that (1) he is a member of a protected class, (2) he met his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly-situated employees outside of his protected class were treated more favorably. *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 753 (7th Cir. 2014).

The only similarly-situated employee outside his class that Ceska identifies is Greg Jackson (Ceska is Caucasian and Jackson is African American). For the reasons stated above, however, Jackson is not similarly situated to Ceska: whereas Ceska sought permanent placement in the equipment dispatch position, Jackson was only temporarily detailed to that position. Moreover, although Jackson had a medical restriction, he was not detailed to the equipment dispatcher position for that reason; rather, he was detailed to that position pending an investigation in his unit. Indeed, Jackson was able to perform the essential functions of the MTD position and, following

14

his detail as an equipment dispatcher, returned to the Bureau of Rodent Control. Def.'s LR 56.1(a) Stat., Ex. T (Def.'s Answer to Pl.'s Third Set of Interrogs.), at 2. Ceska does not address any of these distinctions in his response brief. Nor does he provide any additional evidence of discrimination. Accordingly, no reasonably jury could find that Jackson was similarly situated to Ceska. His race discrimination claim therefore fails.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [dkt. no. 37] and directs the Clerk to enter judgment in favor of defendant City of Chicago.

                         _____
                         MATTHEW F. KENNELLY
                         United States District Judge

Date: February 3, 2015